[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-13820
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 14, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-21159-CR-KMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KEITH DEVON ADAMS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 14, 2010)

Before EDMONDSON, BIRCH and WILSON, Circuit Judges.

PER CURIAM:

Keith Devon Adams appeals his conviction and sentence for possession of a

firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Adams presents

five issues on appeal. First, he argues that the government did not present

sufficient evidence at trial to support his conviction under § 922(g)(1). Second,

Adams argues that his sentence at the top of the guideline range was in error

because the district judge failed to state adequate reasons for sentencing at the top

of the guideline range. Third, Adams contends that basing his designation as an

armed career criminal ("ACC") on a prior Florida drug felony was error because

the Florida law was broader than the definition of "serious drug offense" in the

federal Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(A)(ii).

Fourth, Adams argues that basing his designation as an ACC on a prior conviction

for burglary was error because burglary should not be classified as a "violent

felony" for the purposes of the ACCA. Fifth, Adams argues that his designation as

an ACC was error because the prior convictions that established his qualification as

an ACC were not charged in the indictment, nor proven to a jury. We find no

merit to these arguments and affirm Adams's conviction and sentence.

## I.

On December 9, 2008, Adams was driving a car that was stopped by

Officers Vincent Stafford and Dante McKay of the Miami-Dade Police

Department. Upon approaching the car Officer Stafford was able to observe

Adams passing an assault rifle to the passenger. At this point, Adams put the car in drive and sped off. Officers Stafford and McKay chased Adams at high speed until Adams's car hit a median and stalled. Officer Stafford was able to see the assault rifle, wrapped in a white towel, being dropped from the passenger side window. Adams and the passengers[1] fled on foot. The police were only able to apprehend Adams.

During the high speed chase Officer Stafford was communicating with police dispatch; however, he did not mention the presence of an assault rifle. An independent witness by the name of Robens Stingley testified that he witnessed an object, which he later discovered to be a gun and bullets, being thrown from Adams' car. Officer McKay testified that he did not see the assault rifle when they first stopped Adams, but that he did see Adams concealing a long black object along the side of his body. Officer McKay also testified that during the chase Officer Stafford informed him that Adams had a gun. The government's forensic biology expert, Julie Wan Wong, testified that several DNA profiles were recovered from the rifle, but Adams's DNA was not one of them. However, Wong testified that this did not mean that Adams did not touch the rifle and that the fact

---

[1]Although the officers only observed Adams and a front seat passenger in the car, the front passenger seat was later found pushed forward; thus, there may have been a back seat passenger who pushed the seat forward to flee the car.

that the rifle was wrapped in a towel could have frustrated the DNA analysis.

Finally, Teddy Harley, a fingerprint expert, testified that he could not recover any

fingerprints of any value from the rifle or the ammunition. Harley further testified

that recovering usable fingerprints from firearms is difficult due to their surface

and the fact that the assault rifle was wrapped in a towel.

Adams was convicted by a jury of being a felon in possession of a firearm.

At sentencing, the district court found that Adams was previously convicted of: (1)

robbery/carjacking in 2001; (2) burglary of a dwelling in 2005; and (3) possession

of cocaine with intent to sell or deliver in 2008. These convictions qualified

Adams for classification as an ACC and thus he was subject to a mandatory

minimum of fifteen years under 18 U.S.C. § 924(e)(1). The district judge

sentenced Adams to 288 months' imprisonment.

## II.

*A.     The Evidence Was Sufficient to Support Adams's Conviction Under 18
U.S.C. § 922(g)(1)*

We review the sufficiency of the evidence *de novo*. *United States v.

Garcia-Bercovich*, 582 F.3d 1234, 1237 (11th Cir. 2009) (citation omitted). We

consider the evidence "in the light most favorable to the jury verdict, and draw all

reasonable inferences and credibility determinations in favor of the Government."

*United States v. Ellisor*, 522 F.3d 1255, 1271 (11th Cir. 2008) (citation omitted).

4

"[I]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *United States v. Merrill*, 513 F.3d 1293, 1299 (11th Cir. 2008) (quotation omitted).

To obtain a conviction for being a felon in possession of a firearm, the prosecution must prove beyond a reasonable doubt that: (1) the defendant was in knowing possession of a firearm; (2) the defendant was a convicted felon; and (3) the firearm was in or affected interstate commerce. 18 U.S.C. § 922(g)(1); *United States v. Palma*, 511 F.3d 1311, 1315 (11th Cir. 2008) (per curiam) (citation omitted), *cert. denied*, 129 S. Ct. 215 (2008). Adams argues that the evidence presented at trial was not sufficient to prove that he was in possession of the assault rifle. Adams bases this assertion on three arguments: (1) that Officer Stafford did not see Adams pass a rifle to a passenger in his car because Officer Stafford did not mention this fact when he requested backup; (2) that there were one or two other individuals in the car who could have possessed the rifle; and (3) that there was a lack of fingerprint and DNA evidence.

The facts presented at trial were sufficient to show that Adams had actual possession of the rifle. Officer Stafford testified that he observed Adams passing

5

the rifle to the passenger, Officer Mckay saw Adams hiding a long black object along his right side, and both officers and Mr. Stingley testified to seeing the rifle tossed from the car. Nevertheless, actual possession is not necessary to fulfill the possession requirement of § 922(g)(1). It is enough that the evidence show that Adams had constructive possession. *United States v. Wright*, 392 F.3d 1269, 1273 (11th Cir. 2004) (finding sufficient evidence of possession for § 922(g)(1) when firearm was found under the defendant's car seat next to a cold beer). We find that based on the evidence presented a reasonable jury could find that Adams was either in actual or constructive possession of the assault rifle.

B.     *The District Judge Adequately Considered the 18 U.S.C. § 3553(c)(1) Factors When Determining Adams' Sentence*

Adams argues that the district court erred by sentencing him near the top of the guideline range without giving reasons for the sentence, in violation of 18 U.S.C. § 3553(c)(1). In particular, Adams claims that the court failed to explain its rationale for sentencing him to 288 months' imprisonment. Adams argues that his conduct did not merit such a sentence. Finally, Adams contends that even though the court did explicitly consider his criminal history and the need to protect the public, he asserts that these factors were already taken into account in his guideline calculation, and that a sentence at the low end of the applicable guideline range would have sufficiently accounted for these factors.

6

We review *de novo* whether a district court complied with § 3553(c)(1), even if the defendant did not object below. *United States v. Bonilla*, 463 F.3d 1176, 1181 (11th Cir. 2006). When a district court sentences a defendant within the advisory guidelines range and the range exceeds 24 months, "[t]he court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence . . . [including] the reason for imposing a sentence at a particular point within the range." 18 U.S.C. § 3553(c)(1). The Supreme Court has stated that § 3553(c) does not require "a full opinion in every case," noting that the requirements change with the circumstances of each case. *Rita v. United States*, 551 U.S. 338, 356, 127 S. Ct. 2456, 2468 (2007). In *Rita*, the Supreme Court held that the sentencing court complied with § 3553(c)(1) where the judge noted the sentencing guidelines range and the § 3553(a) factors in general. 551 U.S. at 345, 358–59, 127 S. Ct. at 2462, 2469.

In the present case, the district judge: (1) considered Adams' prior convictions; (2) heard and considered argument on all of Adams' objections to the Pre-Sentence Investigation Report; (3) and correctly calculated and considered the guidelines. Upon imposing a sentence within the guidelines, the district judge stated, "The Court has considered the statements of all the parties, the Presentence Report which contains the advisory Guidelines, and the statutory factors." D.E.

7

113 at 12. The district judge provided an explanation for a sentence at the higher end of the guideline by saying, "Based on the need to deter future criminal behavior and the need to protect the public the Court will impose a sentence within the guideline range." *Id*. The district court's statements at sentencing complied with § 3553(c)(1). Accordingly, we affirm as to this issue.

C.     *Adams's Prior Convictions Were Properly Counted Under the Armed Career Criminal Act*

The ACCA requires a minimum sentence of 15 years' imprisonment for a defendant who violates § 922(g) and has three previous convictions for a "violent felony or a serious drug offense." 18 U.S.C. § 924(e)(1). Adams contends that he should not have been sentenced as an ACC because he did not have the requisite three felonies required under the ACCA, 18 U.S.C. § 924(e)(1). Adams puts forth two arguments in support of this contention: (1) that the Florida drug law under which he was convicted criminalized conduct that does not qualify as a "serious drug offense" under the ACCA; and (2) that his conviction for burglary of an unoccupied dwelling is not a "violent felony" under the ACCA.

"We review *de novo* whether a conviction is a 'violent felony' or a 'serious drug offense' within the meaning of § 924(e)." *United States v. James*, 430 F.3d 1150, 1153 (11th Cir. 2005) (citation omitted), *aff'd*, 550 U.S. 192, 127 S. Ct. 1586 (2007). In determining whether a prior conviction is a qualifying offense under the

8

ACCA, we apply a "categorical approach, looking only to the statutory definition of the crime charged, rather than the actual facts of the individual's prior conviction." *Id.*

    1.     *Adams's Prior Florida Drug Offense is a Qualifying Offense for the Purposes of the ACCA*

The ACCA defines a "serious drug offense" to include "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). Adams was convicted in 2008 under Fla. Stat. § 893.13(1)(a), which made it "unlawful for any person to . . . possess with the intent to sell, manufacture, or deliver, a controlled substance." According to § 893.13(1)(a)1, when the controlled substance involved is named or described in Fla. Stat. § 893.03(2)(a), the defendant commits a second-degree felony. Adams was convicted of possession with intent to sell, manufacture, or deliver cocaine and cocaine is listed as one of the proscribed controlled substances. Fla. Stat. § 893.03(2)(a)4. At the time of Adams's conviction, second-degree felonies in Florida were punishable by a maximum term of imprisonment of 15 years. Fla. Stat. § 775.082(3)(c).

Adams notes that § 924(e)(2)(A)(ii) does not mention "possession with the

9

intent to sell," while the Florida statute of conviction does. To support his argument, Adams cites the Fifth Circuit's holding in *United States v. Gonzales* for the proposition that where a state statute includes the term "to sell," but the federal sentencing definition does not, a defendant's sentence cannot be enhanced because the state statute is broader and covers conduct not covered by the federal statute. 484 F.3d 712, 714–16 (5th Cir. 2007) (per curiam).

In order to constitute a "serious drug offense," the language of the state statute of conviction "need not exactly match the ACCA's definition of a 'serious drug offense.'" *James*, 430 F.3d at 1155. Instead, the relevant inquiry is whether the state statute of conviction "falls within the ACCA's definition of a 'serious drug offense.'" *Id.* We have stated that because the ACCA's definition of a "serious drug offense" uses the broad term "involving," a "'serious drug offense' may include even those state offenses that do not have as an element the manufacture, distribution, or possession of drugs with intent to manufacture or distribute." *Id.* Consequently, even where the intent to manufacture or distribute was not an element of the underlying state drug-trafficking conviction, we held that the conviction was still a "serious drug offense" because the intent to distribute could be inferred. *Id.* at 1155–56 (basing such inference on defendant's possession of between 200 and 400 grams of cocaine).

10

Further, *Gonzales* does not deal with the ACCA. 484 F.3d at 714. If Adams is going to rely on Fifth Circuit precedent, *United States v. Vickers* is more relevant because it finds a Texas statute, similar to the Florida statute at issue here, to be included within the ACCA's predicate offenses. 540 F.3d 356, 365 (5th Cir. 2008) *cert. denied* 129 S. Ct. 771 (2008) (finding that the "word 'involving' is an exceedingly broad term for a statute" and thus a "Texas conviction for offering to sell a controlled substance is one 'involving' distribution of a controlled substance under the ACCA").

We find that Adams's Florida conviction under § 893.13(1)(a)1 is adequately related to § 924(e)(2)(A)(ii) such that it should be considered a serious drug felony. Adams's Florida conviction subjected him to a potential of 15 years of imprisonment. Further, the terms "selling" and "delivering" in § 893.13(1)(a)1 are reasonably related to "involving . . . distributing" in § 924(e)(2)(A)(ii). *See James*, 430 F.3d at 1155. The district court did not err in using Adams's Florida drug conviction as a predicate under the ACCA. Accordingly, we affirm as to this issue.

2.  *Adams' Burglary Conviction is a Violent Felony for the Purposes of the ACCA*

The ACCA defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that:

11

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another

18 U.S.C. § 924(e)(2)(B).

In *Taylor v. United States*, the Supreme Court held that "an offense constitute[d] 'burglary' for purposes of a § 924(e) sentence enhancement if either its statutory definition substantially correspond[ed] to 'generic' burglary, or the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant." 495 U.S. 575, 602, 110 S. Ct. 2143, 2160 (1990). The Supreme Court defined "generic burglary" as "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Id.* at 598, 110 S. Ct. at 2158.

Florida defined "burglary" at the time of Adams's conviction in 2005 as "[e]ntering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain." Fla. Stat. § 810.02(1)(b)1 (2003). Under Florida law, where the defendant was not armed, but entered or remained in an unoccupied dwelling, the burglary constituted a second-degree felony and subjected the defendant to a maximum punishment of 15 years'

12

imprisonment. Fla. Stat. §§ 810.02(3)(b) (2003); 775.082(3)(c) (2002).

Adams acknowledges that the ACCA specifically identifies "burglary" as a violent felony. Nevertheless, Adams states that he is making the argument for appellate preservation purposes in light of the Supreme Court's decisions in *Chambers v. United States*, 129 S. Ct. 687 (2009), and *Begay v. United States*, 553 U.S. 137, 128 S. Ct. 1581 (2008). Adams's Florida burglary conviction qualifies as a "generic burglary," and thus is a qualifying "violent felony" under the ACCA. The district court properly classified Adams as an ACC based on the predicate burglary and drug offenses. Accordingly, we affirm as to this issue.

E.     *Adams's Prior Convictions Do Not Need to be Proven to a Jury for Him to be Classified as an ACC*

Adams argues that he should not have been designated an ACC because the facts of his prior convictions were not found by the jury or charged in the indictment. We review constitutional sentencing issues *de novo*. *United States v. Paz*, 405 F.3d 946, 948 (11th Cir. 2005) (per curiam). Adams concedes that his argument is contrary to the Supreme Court's holding in *Almendarez-Torres v. United States*, 523 U.S. 224, 247, 118 S. Ct. 1219, 1233 (1998), but raises the issue to preserve it for appeal. We find that Adams was properly classified as an ACC and the Supreme Court's holding in *Almendarez-Torres* forecloses any argument to the contrary. Accordingly, we affirm.

13

**III.**

We find that there was sufficient evidence for a reasonable jury to find Adams guilty of violating § 922(g)(1).  The district court judge adequately weighed and considered factors when sentencing Adams to a term of imprisonment within the guideline.  Further, Adams was properly classified as an ACC.  We affirm the conviction and sentence.

**AFFIRMED.**